## Adolph De Gaultie v. The State.

Article 772 of the Penal Code reads as follows: "If any carrier, to whom money, goods, or other property shall have been delivered, to be carried by him; or if any other person, who shall be intrusted with such property, shall embezzle or fraudulently convert to his own use any such money, goods, or property, either in the mass, as the same were delivered, or otherwise, he shall be deemed guilty of theft, and shall be punished as prescribed by articles 756 or 757, according to the amount of the value so embezzled or misapplied." (Paschal's Dig., Art., 2423.) *Held*, that where money was delivered to the wife of the accused, to be carried to a third party, which money the husband converted to his own use and failed to pay on demand he was guilty of theft within the meaning of this article.

But the indictment having charged that De G. stole the money from the "*person*" of B., proof that the money was delivered to the wife in New Orleans to hand to H. in Houston does not sustain the charge of theft from the person.

The facts only constituted a breach of trust at common law; being a purely statutory offense, the *allegata* and *probata* should agree.

APPEAL from Harris.   The case was tried before Hon. WILLIAM K. FAYLE, judge of the criminal court of Harris and Galveston counties.

The indictment charged that De Gaultie "did fraudulently and feloniously steal, take, and carry away, from the person of M. Brady, four hundred and sixty dollars, in United States currency," and that this was done in the county of Harris, on the 10th day of August, 1867.   The evidence is sufficiently given by the court.

*Henderson & Whitfield,* for appellant.—I. The money was placed in the possession of De Gaultie's wife.

We hold that the possession of the wife is the possession of the husband.

The moment Mrs. De Gaultie received the money, she held it in trust for her brother.   She became his agent, through whom he was to transmit money to Mr. Kaumheimer.   A wife can make no binding contract unless she is joined by her husband.   When she received the money she said, "Yes, we will deliver it;" showing clearly that the trust was reposed in both.

The money came into De Gaultie's possession lawfully, and the subsequent appropriation of it was not theft. (Paschal's Dig., Art. 2385.)

II. There was error in the reply of the judge to a question propounded to him by the jury, to wit: "Can the husband steal property in the possession of the wife that belongs to a third party?"   To which the court replied, "Certainly."

III. There was a grave error in the court permitting Mrs. De Gaultie to testify against her husband concerning

a transaction which took place during coverture. Mrs. De Gaultie's whole testimony is a repetition of communications made to her during coverture, and her testimony should have been excluded. (Paschal's Dig., Art. 3112.)

No brief for the State has been furnished to the *Reporter*.

LINDSAY, J.—Adolph DeGaultie was indicted, tried, and convicted, in the criminal court of Harris county, upon a charge of stealing $460, in United States currency, from the person of one M. Brady. The proof shows that the money was placed by said Brady in the possession of the wife of DeGaultie, in his presence, and with his assent, in the city of New Orleans, to be brought to Houston, Texas, and there delivered to a Mr. Kaumheimer. The money was never delivered to Mr. Kaumheimer, and when DeGaultie was called upon by Kaumheimer for the money he admitted he had spent it.

By the common law this would be nothing but a breach of trust, for which the party would only be liable in a civil action. But by our criminal statutes such conduct is declared to be something more than a civil injury. It is made a felony. The facts proved upon the trial establish beyond all reasonable doubt, by testimony perfectly legal and competent, that the accused was guilty of a violation of the criminal laws of the country, and he is amenable to the penalties of those laws. The proof shows that, in the acts done by him, he violated article 2423 of the Criminal Code, (Paschal's Dig., p. 468,) for which he is justly obnoxious to the penalty denounced against the offense therein described. But a question is presented in this case which must be determined by the court according to the law. The common law made no distinctions in larceny, except by its classification into petit and grand, and simple and mixed, or compound larceny. This classification has the advantage of simplicity, and certainly facilitates the administration of criminal

justice.   But our criminal code makes a variety of distinct-
ive differences in the crime of larceny or theft, depending
upon the subjects and manner of its commission, annexing
different penalties to the crime, which complicate, in no
small degree, the application of the law to the undefined
methods of pleading tolerated in our system.   Our code
has theft in general, which may be said to find its classifi-
cation into petit and grand larceny, in affixing different
penalties to the offense, according to the value of the per-
sonal property feloniously taken, stolen, and carried away.
Then, specially, we have theft from the person, theft from
the house, and theft of particular animals; to the offenses
for which different penalties are annexed, and, conse-
quently, to secure a conviction for these specific kinds of
theft, appropriate allegations must be made in the prosecu-
tion or the charge by indictment.   To charge a man with
the theft of a horse, the indictment is not sustained by
proof that he stole neat cattle, though each may be the
felonious taking and carrying away of property in animals.
To accuse a party of stealing from a house, is not responded
to by proving that he stole from a carpet-bag while lying
by the road-side.   This certainly is not allowable, although
the penalties attached to the offenses enumerated were all
precisely identical.   The statute itself has made them dif-
ferent offenses, and a party must be prosecuted for the
offense he has actually committed.   It is entirely incon-
gruous with all system—and both the law and its admin-
istration in every civilized country is recognized as a sys-
tem—to charge a party with one offense, and on trial
convict him of another.   The verdict of the jury in this
case was not responsive to the indictment.   It was not a
true saying.   The charge is, that the accused feloniously
took the money from the person of M. Brady.   The ver-
dict responds, it is true.   The proof does not warrant the
finding.   The view of the law which we have here pre-
sented we do not think militates against article 3096 of

Paschal's Digest, enumerating degrees of offenses. If the charge in the indictment had been the commission of theft in general, without making the charge for a specific kind of theft, the jury might have found the defendant not guilty of the higher offense, but guilty of the specific offense which may have been proved upon the trial. If a party is indicted for manslaughter, a culpable degree of homicide, he cannot be convicted of murder. The judgment of the criminal court is therefore reversed, with directions to award a new trial.

REVERSED AND REMANDED.